IN THE CIRCUIT COURT OF SALINE COUNTY, ARKANSAS
SECOND DIVISION

RHONDA DePRIEST                                                      PLAINTIFF

VS.                       NO.: CV-2011-305-2

DENNIS MILLIGAN,
individually and in his
Official Capacity

63CV-11-305          631-63100000355-010
RONDA DEPRIEST V DENNIS MILL  7 Pages
SALINE CO            02/24/2012 11:20 AM
CIRCUIT COURT                       FI51

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Dennis Milligan, a Republican, ran for Saline County Circuit Clerk in 2010 and won. He opposed the incumbent clerk, Doug Kidd, a Democrat. When Milligan assumed the office on January 1, 2011, he did not reappoint the Plaintiff, Rhonda DePriest, to her position as chief deputy. Milligan hired a person of his choosing, Jim Harris, to be his chief of staff in DePriest's place. DePriest was an at-will employee.

DePriest contends in her lawsuit that she was not reappointed by Milligan solely because of her political support for Kidd during the campaign. She further claims that her termination from employment was retaliation by Milligan for her support of and campaigning for Kidd. DePriest alleges that these actions violated her rights under the Arkansas Constitution, made actionable by the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. § 16-123-105.

Milligan disputes DePriest's contention that he declined to reappoint her as chief deputy in retaliation for her support of and campaigning for Kidd. Nonetheless, taking this allegation as true for purposes of this motion only, Milligan is entitled to summary judgment as a matter of law on this claim because DePriest's position was not protected from dismissal for political reasons. In addition, Milligan is entitled to qualified immunity

1

because he reasonably believed at the time he dismissed DePriest that she did not enjoy constitutional protection in her position as chief deputy.

**Loyalty and Politics**

The Arkansas Supreme Court has not decided a case like DePriest's and has *not* held that protections under the free speech provisions of the Arkansas Constitution (Ark. Const. art. II, § 6) are greater than those under the federal constitution. *McCullough v. UAMS*, 559 F.3d 855, 865 (8th Cir. 2009). DePriest's claim of political retaliation should be analyzed under the federal standards governing First Amendment retaliation. *Id; see also* Ark. Code Ann. § 16-123-105(c) (court may interpret ACRA in light of 42 U.S.C. § 1983).

An elected official cannot discharge public employees *solely* for not supporting the official politically. *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673 (1976). In *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287 (1980), the Court held that dismissal of two public defenders because they were Republicans would violate the First Amendment unless those employees held confidential or policymaking positions for which political loyalty is necessary for effective job performance. The issue as stated by *Branti* "is not whether the label 'policymaker' or 'confidential' fits a particular person, but whether political loyalty is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518; see *Bauer v. Bosley*, 802 F.2d 1058 (8th Cir.1986) (political loyalty necessary for legal advisor to elected clerk of court); *Barnes v. Bosley*, 745 F.2d 501, 505 (8th Cir.1984) (political loyalty not necessary for employee performing only administrative duties).

As a newly elected official, Milligan was entitled to hire someone to be his chief of staff. The position of chief of staff is not a clerical position but is a position of trust and confidence. There is no reason to believe that someone elected to public office has to retain

the chief deputy of a defeated opponent. In Milligan's administration, the chief of staff has a number of duties that require him to be loyal to Milligan, over and above some level of general loyalty that an employee owes to an employer.

Milligan has assigned duties to Harris that require loyalty and a close, confidential working relationship. The position of chief of staff, by its nature, entails a different relationship than that between the officeholder and the clerical staff.

Milligan has designated Harris as his representative to attend meetings on his behalf sponsored by the Arkansas Association of Counties, the Arkansas Circuit Clerk's Association, and the Administrative Office of the Courts. Harris is Milligan's primary contact with other constitutional offices in the state, including the Governor's Office, the State Auditor, the State Treasurer, the State Land Commissioner, and all state agencies that interact with the Circuit Clerk's Office.

Milligan has designated Harris as his liaison with the press, drawing upon Harris's long experience as a reporter and member of the press. As a regular part of his duties as chief of staff, Milligan has directed Harris to prepare press releases regarding Milligan's accomplishment of his campaign pledges and of his changes, developments, and improvements within the Circuit Clerk's Office. The purpose of these press releases is largely to demonstrate what Milligan has accomplished as the Circuit Clerk, particularly in regard to his campaign promises to do such things as improve office technology and to give back to the community.

In addition, Harris helps Milligan write speeches that Milligan has to deliver and acts as Milligan's "overall ambassador" in the community. When Harris is off the clock, he attends political events for Milligan and promotes changes that Milligan has made in the

Circuit Clerk's Office. In this regard, Milligan consults with Harris regarding political matters and values Harris's political insight and counsel, based on Harris's experience in the political arena.

Milligan has assigned Harris responsibility for improving and maintaining the Clerk's website. Milligan has emphasized his accomplishment of his campaign promises on the website. Milligan pledged during the campaign that if elected he would give a portion of his clerk salary for public causes. Harris has included content information and photographs on the website about Milligan making good on this campaign promise. Harris has also been directed by Milligan to highlight other activities by Milligan in his capacity as Circuit Clerk that will reflect his accomplishments as Clerk and advances he has initiated as the Clerk.

Other duties assigned to Harris include managing the office staff and making recommendations to Milligan on hiring, firing, and discipline of employees. Harris is delegated the responsibility of acting on customer complaints. Other duties regarding office management include:

- Monitoring employee attendance,
- Preparing payroll information and ensuring that the staff is paid correctly and on time,
- Monitoring workload in the office to ensure that the office is adequately staffed, and
- Working with the County's human resources office to ensure county, state, and federal employment policies are followed.

Milligan has also assigned Harris financial duties within the office. These include preparing and making daily deposits into the office's operating account and depositing funds

into and writing checks bi-monthly from the juvenile court representation and restitution funds.

The law does not require a threshold amount of political loyalty to make a position subject to the test of *Branti v. Finkel, supra*. Where political loyalty is a necessity of the position, a quantum measurement is inappropriate. Otherwise, the court would be required to make political judgments about an officeholder's decisions.

In the present case, Milligan has exercised his right to hire his own chief of staff. The duties he assigned to Harris clearly exemplify the role one would expect a chief of staff to play in any administration. Harris is Milligan's alter ego at official meetings. An officeholder needs someone he can trust to project the "brand" of the elected official without fear that the delegate will contradict or embarrass the official. Trust and political loyalty help ensure that a delegate such as Harris will move publicly in the manner and direction dictated by Milligan. The same is true with respect to the press and public statements. In writing press releases and speeches, Harris speaks with the voice of Milligan. Milligan is entitled to the security of knowing that his alter ego and second in command will not falter on purpose or by mistake in representing him before the public eye.

The reality of public office is that voters continue to scrutinize elected officials between election seasons. Many activities of an elected official are not overtly political, but he is nonetheless always running for re-election. The second in command, the chief of staff, has to share the same desire for political success as the officeholder/candidate does. As long as we intend as a society to have elected officeholders such as circuit clerks, then we must accept that the office is political. Milligan's choice of his chief of staff is as integral to his political decision-making as the office he chooses to seek and the platform he campaigns on.

In this regard, Milligan acted reasonably in light of the clearly established law when he decided to replace Kidd's chief deputy with his own chief of staff. Milligan is entitled to qualified immunity in this case because he could not have reasonably known that not reappointing DePriest to her position as chief deputy would violate her speech rights under the Arkansas constitution. *See Smith v. Brt*, 363 Ark. 126, 131-2, 211 S.W.3d 485, 489 (2005). There is no law in Arkansas that puts Milligan on notice that he would violate the rights of an at-will employee by terminating her to make a position available for his own chief of staff. Generally, people expect that a newly elected officeholder will want his own person to hold the most confidential subordinate position.

**Conclusion**

Based on the foregoing analysis, it is evident that the position at issue in this case, occupied at the present time by Jim Harris, is a confidential position of trust that requires political loyalty at its core. The simplest test of the argument made by Milligan is to ask whether Milligan's successor would retain Harris, if Milligan loses his office to an opponent in the next election. No one can reasonably expect that Harris would be welcomed and retained by the next administration. Milligan is entitled to have this case of political sour grapes dismissed.

FUQUA CAMPBELL, P.A.
Attorneys at Law
425 West Capitol Avenue, Suite 400
Little Rock, Arkansas 72201
(501) 374-0200
Attorneys for the Defendant


By: David M. Fuqua
Ark. Bar No. 80048
E-mail: dfuqua@fc-lawyers.com

## CERTIFICATE OF SERVICE

I, David M. Fuqua, hereby certify that a true and correct copy of the foregoing pleading has been served on the following by United States mail, first class postage paid:

Don Spears
Don Spears, P.A.
Attorney at Law
113 South Market Street
Benton, Arkansas 72015

Luther Oneal Sutter, Esq.
HARRILL & SUTTER, P.L.L.C.
Post Office Box 2010
Benton, Arkansas 72015

on this 24th day of February, 2012.


David M. Fuqua